The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Mr. Nolan, Miami Rec. Good morning. Morning. May it please the Court. At oral argument in the first appeal, the Court posed a hypothetical which had not been previously argued by the EEOC or considered by the District Court, namely a 20-year-old and a 40-year-old new hire having the same 20 years until early retirement eligibility, yet the older new hire contributes at a higher rate. The County was unable to answer this hypothetical. The Court accordingly said this disparity in rates was not justified by the time value of money. The Court could not determine from the record as a matter of law whether the contribution rates were justified by permissible financial considerations, and it remanded for the District Court to decide whether the ERRS is supported by such financial considerations. Based on the uncontroverted evidence obtained after remand, the first answer to the hypothetical is that the early retirement benefits were plan enhancements for which the participants paid nothing. Those negotiated benefits are fully subsidized by the County and are given safe harbor from violating the ADEA by Section 4L of that statute. That section of the ADEA appears at Addendum 3 to the County's brief. County's addition to ERRS starting in 1973 of, quote, generous early retirement options, which was the phrase used by the District Court. So the rates paid by a person who came on at an older age, although you say they are not related to early retirement benefits, they would still pay more money in 20 years? Yes. They just pay more money and they gain nothing from it? Well, they had the benefit of a normal retirement at the time of retirement age. As far as early retirement, they gain nothing from it? Well, they gain something from the County when the County provided the enhancement at no cost. Well, they don't gain anything for that additional payment is the question. Well, they do gain something. What do they gain? They gain the time value of money so that they're I thought you said the benefit is the same. It's fully subsidized at early retirement. There's two different concepts, Your Honor. I'm aware of that. In my question, you said that no matter what you said was a young person or an older person starting, they get to early retirement. You said it's fully subsidized. Correct. So I'm asking you. And you also told me that those two employees you were contrasting, the older pays more money from day one. Correct. And what does the older person get for that at early retirement? What the older person gets. The answer would be what? A normal retirement at the age, retirement age. Early retirement, I said. Well, they also have available to them a retirement. So they get nothing extra at early retirement? They get an early retirement option. I said what do they get extra? That means in addition to what the younger person who paid less over that time period get. They get the same benefit as the younger worker. But they pay more for it? They do. And that is because when the rates were calculated, pension status, i.e., the employee's age at the time of age retirement, reaching the age of retirement. My question is this. Do I understand the system correctly that two employees start at the same time? The younger employee will pay less out of their monthly paycheck than the older employee. But when they get to the requirement for early retirement, if they each take early retirement, the older employee will have paid more than the younger employee. That's correct. But they will not have paid a single penny for the early retirement. That is completely paid for by the county. And that is in compliance with and comports with the requirement of Section 4L. If the safe harbor were not there, would that be an age discrimination issue? If the safe harbor provision were not there just on the early retirement itself, wouldn't it seem like the county would have to subsidize more for the younger employee than the older employee for the early retirement? Well, I think it needs to be remembered.  There's a potential for that, yes, and that's why in Congress recognize No, I understand that. And if the court looks at the legislative system What's the justification for, so in other words, in my first hypothetical, the older person, the older worker pays more money but gets nothing for it in early retirement. No, they do get something. The older worker joins the system. They pay a higher rate because there are fewer years remaining for them to They take early retirement at the same number of years. I understand, but if I could just address it in two steps. They pay more because there's less time for them to accumulate a sufficient reserve to purchase an annuity to pay for their theoretical one-half But not for early retirement. Understood. Not if the younger worker leaves at age 40. The worker hired at 20 leaves 40. And that worker is going to be draining the system a lot more by collecting paychecks for many more years, all things being equal than the older worker. So it really seems that the younger worker is paying less and ultimately getting more. And that is potentially the way it works out, but that's not what happened here because the evidence is that the older worker, the county pays more toward the cost of the older worker's retirement than to a younger worker. We're interested in what the employee is paying, aren't we? And the employee is paying, based upon their age, the time they join the system, that is the number of years remaining until they retire, an actuarial calculation, a contribution rate calculated in a 10-step process. Well, how can it not be facially discriminatory if the rate is calculated by age and the older employee pays more? How can that not be facially discriminatory? Because under Kentucky retirement, it's paid. Well, how do you even get there if you have the facial discrimination? Well, Your Honor, just the fact that the word age appears in the statute doesn't make it facially discriminatory. No? No. But then you pay more based on your age? Yes, because as the statute says, the rate of contribution is determined based upon the individual's age, the time they join the system, which is another way of saying the actuary makes that calculation of that rate based upon the number of years that employee has until they reach normal retirement age. That is the time value of money. It's like putting money in a savings bank. The older worker has fewer years. Yes, I know that, but the problem is that's without the overlay of the early retirement. That's the issue in the first opinion. And that's really where I'm going because the overlay— You haven't gotten there yet. Well, the point being in the district court's analysis of the contribution rates in its first decision, it went through and used the Kentucky— Did it make any difference where they went? You still have to answer this question, and I've asked you and Judge Keenan has asked you the same thing. You have said it is a fact that for early retirement, an older employee will pay more and gain nothing for that additional payment, and it's based on their age. The older worker is not paying for the early retirement. It's completely paid for by the county. I know that. So then why don't you say you can have early retirement and you don't have to contribute anything no matter when you start? Well, they're contributing according to the rate that was calculated. According to their age. According to the number of years remaining until they reach normal retirement age, which is different from an early retirement. I know that. We understand that completely, but the problem you have then is the overlay of the early retirement system causes your problem. I thought that should be pretty clear from the first hypothetical in this case before through the opinion to now. The overlay of the early retirement system. And the early retirement is explicitly authorized. No, no, no. It's not the question of how the early retirement acts once a person gets there. The question is what does a person have to do to get there? And what I'm trying to say is that Congress recognized, and it's in the legislative history, that defined benefit plans customarily take age into account in determining a participant's benefit level. Congress knew that. And that's what was taking place here. And it was not considered to be something else. Can you have a system whereby all employees pay the same up into early retirement? Everybody pays the same rate. You could have such a system. Is that what you have in effect now? No. Well, yes, as of 2007. There's a way to do it and get there. And just by way of explanation, because of the length of this case, we reached the point where we were making significant changes to reduce the cost of the pension plan. So that was a good time to do this as a matter of risk management. I thought you were going to say because of the length of this case, you'd hope we'd reach the point that you and all three of us could take early retirement. That is for sure. The EEOC attorney has had three children during the course of this case. He deserves early retirement. She. She deserves early retirement. But going back to the legislative history, and I would really request the court to look at that. It's at Addendum 6, and in the middle of the page, it talks about the second exception that's allowed under 4L and explains it. So it's your view that although an older worker is forced to pay more money before they take early retirement, the fact that an early retirement system is authorized justifies that treatment of an older worker? Yes, because you have two components. One component is the analysis done by Judge Legg initially under Kentucky retirement, examination of the six factors. This is not a violation of ADEA because it's based upon the time value of money. So when you first join, you're an older worker to accumulate a sufficient reserve. You have fewer years. You've got to pay more, and that's okay according to Congress. It's not illegal to do that. On top of that, then, you have later on the early retirement option coming into effect, and the county fully pays for that, fully subsidized. Ergo, Section 4L kicks in, and Congress says, that's okay, too. So you have one legal component, and you have another legal component. The argument here is that somehow by these two legal things having occurred, there is now a violation of the law. It just doesn't make any logical sense. Because there are two different benefits. That's the problem. I understand what the dilemma is, but there are two different benefits, and therefore you have to look at what each employee pays for the benefit. Yes, Your Honor. And that benefit as to early retirement is a heavier burden because of older workers. And that is justified by the time value of money as found by Judge Legge in his initial analysis. That is not driven by time value of money. That's driven by, as you said, the largest of your client pays for it fully, you said. But the normal retirement age benefit is based upon the time value of money. Absolutely. That's permissible. All right. Then we have an early retirement in which Congress has said explicitly, this is exempt from being deemed violative of the Age Discrimination Employment Act. One right, another right does not equal an ADA violation. Now, Judge Legge in his second opinion somehow reached the conclusion that there was a decoupling, that there is no actuarial basis for that, there is no legal basis for it, and there's nothing in the ADA that says that. He seemed to also be thinking that when they instituted the early retirement option, there should have been a recalculation of the rates. Again, there's no requirement that that be done either actuarially or legally. It's just kind of like you take these two things and suddenly, oh, there's facial discrimination. No, you still have to do the Kentucky retirement analysis. That's in the case itself. It says that at 554 U.S. at 147. Before you can find facial discrimination, you've got to do the analysis. The analysis has been done in this case with respect to the original rates, the contribution rates, and they were found to be legitimate and based on the time value of money. By reason of the fact that you then are generous to your employees and offer them an early retirement option for which they pay nothing, simply cannot. Is it in the record why the county changed to a different system of calculation that's in effect now? Time value of money hadn't changed. Time value of money hadn't changed to what should require older people to pay, but I thought for purposes of older retirement, and this may not be in the record, but the current system, not the system you're defending, but the current system, does that current system care about the time value of money? No, because as a matter of risk management. So in other words, despite the time value of money, looking at what Congress has authorized, a system can be set up, can be set up, in which an older person isn't penalized in any way. You can set up a system where the employee pays nothing. I mean, but we have to remember there's an historical context here that goes back to 1945 when this plan was first initiated. The rates were recalculated in 77, and significantly, the older worker was given a larger decrease. Is there any evidence in the record? I can't remember. Is there any evidence in the record that at the time of the allowance of the early retirement system, the county or anybody else thought about the impact it would have on the time value of money and older workers? There's a lot of testimony in the record from the actuary, Your Honor, and he explained that. He never said that there was any need to recalculate anything. I'm assuming an actuary does a calculation. They take what's needed to be taken into account as an actuary, and then they make a recommendation. But you don't need an actuary. You don't need an actuary to say if the system says after 20 years, no matter what your age, you get the same benefit and it's all paid for. You don't need an actuary. Why do you need an actuary for that? You don't. But in terms of what the actuary says about the system, he wouldn't even address that, or she wouldn't even care about that because it doesn't matter. But in terms of its effect on the rest of the system, there was no effect. Effect on an older person who wants to take early retirement. That was my question. Well, but that option is available to them. They still have the option to wait until they reach normal retirement age, and their rate for that is calculated based on the time value of money. We respectfully submit that the court is decoupling LEAP. There's no basis for it. It's seeming indication that there should be a recalculation of the rates. There's nothing to support that. And the court did not perform the Kentucky Retirement System's analysis, which it had done before, reaching the conclusion that the contribution rates were calculated based on the time value of money. That together with the legality under Section 4L of the early retirement option equals no violation of the ADEA. Thank you. Thank you, Mr. Donnelly. You've reserved some time. Mr. Ramshaw? Are there any questions? Yeah, why are you wasting our time since there's no age discrimination involved in this case? That's the argument that I've heard. I mean, you ought to know there's no age discrimination. The county's explanation for why older enrollees have to pay a higher percentage of their salary is that, and the reason why they say it's not facial age discrimination is because they say that's based on the number of years until you retire. And since 1973 for general employees and certainly since 1988 for correctional officers, that's not been true. So far we've been referring to the years of service, retirement based on years of service, the 20 or 30 years as early retirement. But that for a long time has not been true. When you try to figure out what's normal retirement and what's early retirement, normal retirement is what's defined as normal retirement by the plan. Just because if the plan says you get normal retirement after 20 years of service, that doesn't mean that's early retirement. That means that's normal retirement because that's how the plan defined it. Early retirement is retiring before normal. When you get reduced benefit. Yes, yes. And since 1973, certainly since 1990, it's clear in the appendix, they've had a separate early retirement provision where you do get reduced benefits. Right. Right. But if you could back up just a little bit conceptually with the legal burden, what was your burden in this case? Our burden is to show that age actually motivated the older rates that the older enrollees had to pay. And once the years, once you're aged, no longer determined the number of years until normal retirement, then the fact that they can't say, oh, we didn't, yeah, it looks like age. In fact, the code says age, but we really meant pension status. But once they've added years of service to normal retirement as a normal retirement option, then it's no longer true that your age is the number of years until you reach normal retirement. Now, you can, now if you're a correctional officer, you start at 22, normal retirement is either 55 or 42 or somewhere in between there. But after 20 years of service, you're eligible for normal retirement. Therefore, your age, difference in your age and 55 or 60, no longer determines your pension status, no longer determines the number of years until normal retirement. What about counsel's argument that you have to do the Kentucky retirement analysis? I know in the Kentucky case you didn't have a specific tethering to age in the plan. Isn't that correct? Right. But what other reasons? Could you go over for us, distinguish the Kentucky case from what we have here? Yes, Your Honor. Kentucky retirement, the court said, okay, we're not, we're not, we're not disturbing the traditional rule that if the plan discriminates on its face and faces age, that it violates the ADEA. We are here looking at a special case where the differential treatment is based on pension status, and there, too, pension status meant the number of years until normal retirement. And that pension status depends partly lawfully on age. Okay. So that would, so that would, before 1973, Kentucky retirement would arguably apply. But once age became decoupled from pension status, meaning years until normal retirement, then Kentucky's, then we don't fit into that special case that Kentucky retirement was back to the normal rule that if you, if the plan violate, if the plan, if the differential treatment is based expressly on age, which it is in this case, then it violates the ADEA. I'd like to address briefly that going back to the normal retirement, I'm not sure I'm, I did not, just because you are allowing, normal retirement does not have to be in age. Normal retirement can be years of service. This was true in Kentucky retirement. In Kentucky retirement, the normal retirement was 20 years of service or age 55 and five years of service. So lots of plans have normal retirement being after a certain number of years of service. It does not have to be in age. Let me speak briefly about Section 4L, please. Section 4L says it is not unlawful for a defined benefit plan to provide payments that constitute the subsidized portion of an early retirement benefit. Let me stop you for a second. I'm sorry? Let me stop you for a second. Certainly. I'm not completely following everything you're saying. Oh, I'm sorry. But did you just say that Kentucky retirement applied to exactly a plan like we have here? You said the plan you had basically normal retirement or whatever you want to call it and early retirement. I thought you just said that. Did you not just say that? I've spoken of Kentucky retirement in two contexts. But you just said the most recent. What I just said was the plan in Kentucky retirement is an example of a plan that defines normal retirement by years of service. So, I mean, at one place in their brief they say, you know, you used to have to work until you were 60 and then we gave the special benefit where you could retire after 30 years or 20 years of service and obviously that's early retirement. No, it's not obviously early retirement. What constitutes normal retirement is what it says in the plan. And the plan consistently. I don't understand. Are you trying to make some difference on what people call early retirement? Well, that is an important difference in this case because it goes to the availability of 4L. Okay. I should maybe drop it. Talk about 4L. I guess what you're saying is that in this case early retirement and normal retirement, those lines are blurred and there's overlap. It's not quite as dichotomized as the appellant says. Is that what your argument is? Well. Because you keep saying what they call early retirement really is normal retirement. If you look back to 1960. You need to answer his question. Maybe that will help. Is that right? Are you saying that what they're calling the dichotomy really is early retirement is normal retirement? And that's what your premise was when you started? As best I could understand it. Yes. That's correct. Let me do it this way. In 1961, when they first allowed general employees to retire after 30 years of service, even if they hadn't reached 60, they were treating that as early retirement because they said if you reach 30 years of service and you're under 60, you're going to get reduced benefits. Okay. But starting in 73, they changed the plan. They said now normal retirement is reaching 60 or having 30 years of service. Either one gives you normal benefits. You don't have to wait until you're 60. And the same thing for correctional officers with 55 and 20. And consistently, they've also had an early retirement benefit. They say if you retire before 60 or 30 years of service, you can retire with 55 years and 20 years of service, but then you're going to get reduced benefits. So that's just the concept. You know, when you're writing a plan, some things give you normal retirement, and if you want to retire before then, you get reduced benefits unless the employer subsidizes them. Just very carefully and clearly, take us through that Kentucky analysis as you just laid out those three for the history of it. How would it stack up with the Kentucky analysis of what we have here? Learning Council said that hasn't been done. If you do it correctly, he wins. Is that wrong or right? Can I go back? It's a simple question. That's what this whole argument was. Now, don't you just lay it out? Just give us an analysis why if you did the Kentucky analysis, you still win. Go ahead. Or maybe you don't have to do it. Because Kentucky addressed a special case where the differential was based on pension status and pension status in turn lawfully depended partly on age. Once years of service became a normal retirement option, then it's no longer true that age stands for pension status. So the differential treatment here does not depend on pension status. So it's not a Kentucky retirement case. What about 4L? What about the safe harbor? Okay, 4L. First of all, since you're resisting my distinction here, I'll make two points. One is 4L doesn't apply because 4L addresses early retirement benefits. You're talking about the reduced benefits when someone retires. Right, right. What 4L says, it's not unlawful for a defined benefit plan for the employer to provide payments that constitute the subsidized portion of an early retirement benefit. So the plan says if you retire before normal retirement, you will get reduced benefits, 5% for each year. If the employer decides to make up those and say, oh, I'll give you normal retirement benefits anyway, that's what 4L talks about. And here, retiring after 20 years of service or correctional officer is not early retirement. That's normal retirement. So 4L doesn't apply. Secondly, even if 4L did apply, it only talks about what the employer is allowed to contribute. Can the employer punch up the benefits? Let me ask this. Tell me the distinction. What makes early retirement early retirement? Reduced benefits? Early retirement. You tell me. You tell me. What is early retirement? Best definition I can give is it's retirement before normal retirement. You have to look at the plan, see what's the definition in the plan of normal retirement, and then if you try to retire before that, it's early retirement, and that usually means that you don't get full benefits because you're retiring before. With the reduced benefits. Right. Yes. So it's retirement before normal retirement, and it usually means you get reduced benefits unless the employer subsidizes them under 4L. But it's still tied to age normally at some point. Normal retirement can. No, reduce. Reduce. Early. It's tied to age normally. Reduce. Yeah. You can retire before 55 in the Montgomery County plan, and get reduced benefits. That's right. The so-called early retirement plan in which you get reduced benefits, it is age defined as 55, and you get a percentage reduction for each year under 60. It's 55 with 20 years of service. Yes. So age is still a triggering factor even in reduced. Yes. Right. Yeah. Well, the amount of your reduction depends on how many years it would have taken you to get to normal retirement. So you think the subsidy that's allowed under 4L is not a subsidy. It's a subsidy that makes. Why isn't that tied into age? Why isn't that an override of age discrimination, early retirement? Why isn't that? Well, it is. Because isn't it if a person retires at early retirement, reduced benefit, then what they have paid in in the system normally would have paid into the system is less if they started at an earlier age. In other words, if you start at age 20, you can get to 20 years needed at 40, but if you start at 40, you can't get there until 60. So if there's going to be a subsidy for either one of those, isn't there a subsidy in the younger worker getting more subsidy in the early retirement plan? Yes. 4L authorizes that, but doesn't the younger worker get more subsidy in an early retirement? Judge Keenan said, which I thought too, the younger worker who retires, a person who gets to the years required to take early retirement, a younger worker is going to drain the system of more benefits than an older worker. Precisely. Why wouldn't that, absent 4L, why wouldn't that in itself be age discrimination? I'm just asking. Wouldn't that be based on different treatment? Yes, that would. Yes, because as she pointed out, he would have 20 more years of life expectancy. He'd be getting the benefits for 20 more years, and he's paid less for it. I'm asking, doesn't 4L authorize that type of discrimination really, doesn't it? You don't think it does? Well, I don't think it does in this case because retiring after I'm talking about generally, just 4L. Isn't that really a recognition that in early retirement if you can get there by, I don't know what you call it, but what I call early retirement is when you can get out after a certain number of years and you don't have to go through the full years to fully vest total benefits and all that. Isn't that an acknowledgment that a younger worker will reach the years of service at an earlier age than an older worker? Isn't that just a function of math? It does allow the employer. And if you didn't have an allowance for that early, if you didn't have that allowance, every early retirement system would be subject to attack for age discrimination, wouldn't it? If the employer is subsidizing the benefits. That's correct, that's correct. Yes, that's why Congress put that in because that was a common practice. So it seems to me that the county's arguing that once you get there, everybody's treated the same. What I don't understand is the justification for charging people different rates to get there. Precisely. Is that your point? Yes, yes, precisely. I mean, the county is essentially saying, look, it originally And wasn't the mandate in the earlier order of this case, didn't that decision say that it's not clear as a matter of law that the time value of money justifies this distinction? Correct? That's correct. And so on remand, the issue is can the county justify the different treatment of older and younger workers based on what? By some other permissible financial consideration. Is their answer 4L? Is that their answer? Yes, their answer appears to be time value of money plus 4L. And the district court said no, there's no other permissible financial consideration. How can it possibly be time value of money plus 4L? Because the time value of money isn't correct. As to early retirement, the time value of money is 20 years. We're talking about an example where a person goes as soon as they can, say, 20 years. What time value of money is involved in 20 years for somebody age 30 or somebody age 20? Isn't it the same 20 years? That's correct. There's no time value of money in that calculation, is there? No, that's correct. I mean, that matters. And, in fact, if their goal is to have the employees fund about half of their benefits, then once you have years of normal retirement based on years of service, the younger employees should be paying more than the older employees because they're going to get the benefits for a longer period of time. But, of course, let's look at the county, their perspective. They have a good retirement system and then they negotiate with workers or try to give them another benefit. I don't know if they're trying to hurt anybody. They're just trying to give additional benefits. And, quite frankly, I think most people like the idea of having an early retirement. And I think probably an employer likes it because my guess is, honestly, it's cheaper to pay somebody who's coming in at age 20 than it is somebody at age 45, 50, and 60. So it makes sense, but it just seems to me that perhaps that's why I ask about it because I don't think there's anything in the record which shows, at the time the program was devised and put into place, anybody thought about the impact it would have on older workers. I just don't think that was a consideration. But those two concepts do meet here, don't they? Yes, they do. We don't have to show intent because the discrimination is based on age on its face. And their actuary said, look, we do what the county tells us. We could figure years of service retirement in this projection of what people should be paying, but they never did. Then no further questions. I thank the Court and ask you to affirm. Thank you. I appreciate your argument. Thank you. Mr. Nolan, you have some time reserved. A point I want to make at the outset is that the early retirement benefit is optional. So no one knows whether someone will take the early retirement benefit when they join the system. The time value of money concept makes sense. You don't know if somebody is going to take an early retirement. Back to a question that was asked by Judge Keenan regarding the burden of proof. It's interesting if you look, and I'll restate this, but I think it's important. This is at page 147, U.S. Supreme Court 147. The above factors all taken together, this is Kentucky retirement, convince us that the plan does not, on its face, create treatment differences that are actually motivated by age. So they're saying there you have to do that analysis, and it's not been done here. But interestingly, you read on, and the Court talks about the plaintiff having to adduce sufficient evidence. This is the burden of proof. To show that the differential treatment was actually motivated by age, not pension status. That's their burden. And then the Court goes on to say, in our discussion of the factors that lead us to conclude that the government has failed to make the requisite showing in this case, provides an indication of what a plaintiff might show in other cases to beat his burden of proving that differential treatment based on pension status is, in fact, discrimination because of age. There has been no analysis by the EEOC or any evidence presented in this case to meet that burden. The EEOC did not even identify an actuarial expert. The only actuarial testimony in this case, and on summary judgment, was from the county's longtime actuary, Buck Consultants, Mr. David Driscoll. He wasn't the actuary the whole time, obviously, but he is the current actuary. That's the only testimony. So going back to the issue of financial considerations, we squarely address that. Yes, Mr. Driscoll said, it's based on purely financial considerations. Yes, the rates were calculated because of the time value of money, which is an analytically distinct concept from age. So there is essentially no evidence or testimony or even any statute or anything to support this decoupling theory and the need to recalculate rates. The only testimony is it didn't need to be done, and it's not discriminatory. So I think we've somewhat lost sight of the record evidence in this case and the EEOC's burden to prove that what took place here was actually motivated by age. And I think Judge Shebb, as much as said when the county first started this plan in 1945 and subsequently confirmed in 1977 when the older workers were given more of a benefit, they were given more of a reduction than they were otherwise entitled to. How is that age discrimination? You have a couple of simple ways to put this, but a contribution rate calculated based on pension status, that is the number of years until normal retirement age, is not a rate calculated because of age. Stated another way, the EEOC failed to prove that the different contribution rates were actually motivated by age, not pension status. If you didn't have normal retirement and you only had early retirement, would it be age discrimination in this case? If you only had normal retirement? If you only had early retirement. In other words, you only had retirement based on years put in, nothing else. Years put in. Years of service. If you only had years of service. Right. No, because if it's fully... If you charged an older employer more money, would that be age discrimination? No, because the rate was calculated based on the number of years remaining until that employee reaches normal... No, no, no. It's based only on years. Whenever an employee started, you just go 20 years and you get out. That's correct. That's years of service. Does that time value of money matter? Well, that... In a vacuum, there might be an argument, but we're not in a vacuum. It's not in a vacuum. I said in that scenario, would time value of money matter? No, because it's fully paid for by the county. It would not matter. So if you charged an older employee more for those 20 years, no time value of money, do you think, does the county think that would be age discrimination? In my hypothetical. The county does not think that that's a viable scenario because if you... I asked the county a hypothetical. I understand, Your Honor. And your answer is, in your legal position is, in my hypothetical, is that age discrimination? No. And what would happen is that if... You say that's entirely consistent with their position now. If there was only an early retirement option, that is, you could only retire based on that number of years of service, then there would be a completely different calculation. But that's not what we have here. Again, I'm redundant, but I would just like to reemphasize our position, and that is that we have contribution rates that were calculated based upon the number of years remaining until normal retirement, which is based on pension status. And under Kentucky retirement, that's a valid way to approach it. So that has the stamp of approval from Kentucky retirement. Then you have Section 4L, which is a fully subsidized benefit offered by the county that's authorized by Congress and exempted from any claim of age discrimination. That's correct. That's correct. That cannot equal, nor has the EEOC proven, that there was anything based on motivation by age. We would respectfully request the court to reverse Judge Legge to remand this case to the district court for entry of summary judgment on behalf of the county. Thank you, Your Honor. Thank you, Mr. Miller and Mr. Ramshaw, for your argument. We'll come down to Greek Council and then proceed to the next case.
judges: Roger L. Gregory, Dennis W. Shedd, Barbara Milano Keenan